# Exhibit 50

## Declaration under Penalty of Perjury

I, Shawnda Cruz, in accordance with 28 U.S.C. Section 1746, make the following statement:

*EFFECTS OF NONDISCLOSURE: Military members and civilian employees of the Department of Defense (DoD) and its components and agencies are obligated to cooperate in official investigations and may be subjected to administrative action for failing to do so. If I am not a military member or civilian employee of DoD, the disclosure of information by me is voluntary; however, my failure to respond will result in a recommended disposition of the case on the basis of information available.*

*AUTHORITY: The authority to collect the information requested is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.*

*PURPOSE AND USES: The information supplied will be used as a part of the record in an equal employment opportunity discrimination complaint. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Department of Defense, to Federal intelligence agencies, or to others as may be published in the Federal Register.*

<u>Accepted Claim:</u>

Was Complainant discriminated against and subjected to harassment on the basis of race (African American) and reprisal (EEO pre-complaint, April 19, 2010, and formal complaint August 30, 2010) in his position as Supervisory Management Specialist at Defense Contract Audit Agency (DCAA) when:

    a. On March 7, 2010, he was not selected for the position of Deputy Assistant Director, Resources, vacancy announcement number: HQ-10-02; and

    b. In September 2009, he was declined a training opportunity to attend the Defense Senior Leadership Program; and

    c. In reprisal for initiating the instant EEO complaint, he was harassed when in May 2010; he received a negative performance review.

    d. On or about September 13, 2010, his second level supervisor and Assistant Director of Internal Review violated the Privacy Act by directing the IRT personnel to obtain his Personal Identifiable Information (PII).

    e. On or about September 17, 2010, his second level supervisor and Assistant Director of Internal Review targeted him and subjected him to unjust and unwarranted harassment by making him the subject of an Agency Investigation.

Q: You mentioned in your previous answers "the selectee" with regards to vacancy announcement HQ-10-02. Which selectee are you referring to?
R: Merrick Krause
Q: Why specifically do you think that the selectee did not meet the "specialized experience" for the position in question?
R: He did not have experience directly related to the position- Specialized Experience- per Opm Qualifications Standards.

<u>**1475**</u>                                                                                     001500

Q:  You mentioned that your supervisor, Stephanie Harrison, disagreed with you regarding the specialized experience and that she thought the selectee met the criteria and was qualified for the position.  What reasons did she give you for thinking that the selectee was qualified for the position?

R: Stephanie Harrison said that she saw the specialized experience in his resume and I replied that I did not see it and she said she would sign the rating sheet. She is my supervisor, and she has the right to override my decision, as long as she signs the paperwork and annotates on the rating sheet, reasons as to why he was qualified.

Q:  Did you agree or disagree?  Why?

R: I disagreed, because he did not have the specialized experience, required for this position-Per OPM qualification Standards.

Q:  In this particular case, the Complainant was given a performance review.  Is it normal for a performance review, when given, to focus on an employee's positive performance along with noting any recommended improvements in that performance?

R: No

Q:  If no, what information is normally found in a performance review?

R: You don't receive any feed-back. I just had my rating and I actually had to ask, my supervisor if there was anything that I needed to improve on, in my performance review and request that she send it to me in writing.

Q:  Do you have anything to add relevant to the accepted claims?

R: Yes, Your performance review is not based on your performance it is based on personal feelings. The managers need to learn put their personal feelings aside and rate on your performance, because that is their job. For 2 years my Performance Ratings have been based on personal feeling, Ms. Sandra Burrell and Philip Anderson have used my Performance ratings as punishment, for actually reporting their abusive behavior. I have reported this to the Director-Mr. Patrick Fitzgerald, even followed the process to get my rating changed, because Sandra Burrell and Philip Anderson overrode my supervisors' decision of a rating of a 4 and gave me a rating of 3 with no explanation and still nothing was done, in the end Karen Cash, who was the final say, did nothing, I still received a 3. This year I did not receive a mid-year review and my appraisal had clearly been changed, and absolutely nothing was done. The managers need to be held responsible, for not following regulatory guidelines, because it is not fair to the employees. In DCAA, you can go to anyone you want too including the Director and nothing will be done to help you, you will then be harassed by other employees and management constantly, because that is the DCAA way. I have filed 5 IG complaints about the same people in my chain of command and they have been allowed to retaliate  against me and harass me on a daily basis. All I want is to be able to come to work and do my job without being harassed and treated un-fairly. I'm working in a Hostile Working environment and no one, will do anything, to help me.

I, Shawnda Cruz, declare (*certify, verify or state*) under penalty of perjury, that the foregoing is true and correct.

_____                    _____
(Declarant's Signature)                                               (Date)

# Exhibit 51

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATRICK W. BUSH,                 ) | |
|                                ) | |
|     Plaintiff,                  ) | |
|                                  ) | |
|     v.                       ) | Civil Action No. 1:12cv1483 |
|                                  ) | (AJT/IDD) |
| CHUCK HAGEL,                ) | |
|     Secretary of Defense,      ) | |
|                                  ) | |
|     Defendant.               ) | |

## DECLARATION OF STEPHANIE HARRISON

I, Stephanie Harrison, hereby declare under penalty of perjury and state as follows:

1. I am currently an Investigator (Management Analyst) for the Defense Contract Audit Agency (DCAA) internal review directorate. I have occupied this position since May 2010. Prior to this position I was the Human Resources Officer (HRO) for DCAA and held that position from February 2007 to May 2010.

2. As the Human Resources Officer for HQ DCAA I was responsible for overseeing the operations of the HQ Human Resources Office and the supervision of the Human Resources Specialists (HRS). In particular, in this role, I was responsible for overseeing the hiring process for HQ DCAA.

3. While the HRO for DCAA I was involved in the hiring process for the Assistant Deputy Director, Resources position. My involvement consisted of assisting Ms. Cruz, who was the HRS responsible for making the initial determination, which could be reviewed by me if necessary, of all candidates that applied to this vacancy announcement as to whether they supplied the required material and met minimal qualification requirements.

Specifically I reviewed a few applications where she rated the applicants as not qualified based on not meeting the minimum qualifications, I drafted the referral list, and I submitted the referral list along with the qualifying candidate's applications. Additionally, I reversed some of Ms. Cruz's qualification determinations in those instances in which I disagreed with her conclusions. Ms. Cruz and I, as the Human Resources Office subject matter experts, were the only ones qualified to evaluate a candidate's minimum qualifications for consideration by the selecting officials, and no one else.

4. There were three referral lists for the Assistant Deputy Director, Resources position; non-competitive reassignment eligible, which had approximately 10-14 candidates; competitive promotable which had approximately two candidates eligible for promotion; and reinstatement eligible, which had approximately one candidate.

5. The competitive reassignment procedures were only required for competitive promotable candidates (those who were not GS15s) and reinstatement eligible candidates (those not currently employed by the Government) who had not been GS15s previously. The competitive reassignment procedures did not have to be used for reinstatement eligible candidates who had previously been GS15s or for non-competitive reassignment candidates (those who were already GS15s). The competitive reassignment procedures did not have to be used for the non-competitive candidates because the Assistant Deputy Director, Resources position was a simple administrative officer, GS-341-15 position. Administrative position qualification requirements are very basic qualifications. This position does not require a degree or any other specialized certifications to meet minimal

2

qualifications. Thus those candidates who were GS-15s that met minimum qualifications were considered as non-competitive reassignments.

Executed on:                    _Stephanie A Harrison_

                                Stephanie Harrison

# Exhibit 52

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| PATRICK W. BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv1483 |
| | ) | (AJT/IDD) |
| CHUCK HAGEL, | ) | |
| Secretary of Defense, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF MERRICK KRAUSE

I, Merrick Krause, hereby declare under penalty of perjury and state as follows:

1. I am the Deputy Assistant Director, Resources, in the Defense Contract Audit Agency (DCAA). I have occupied this position since I was selected for it in early 2010.

2. Prior to working at DCAA, I worked for the Department of Homeland Security (DHS) November 2006 to March 2010. I started there immediately after retiring from the Air Force as a Colonel serving as the Special Assistant to the Chairman of the Joint Chiefs of Staff. The Assistant Secretary of Infrastructure Protection hired me as his Senior Counsel, a GS15 Step 10, to work as an executive troubleshooter with a mission of fixing mismanaged programs in the Infrastructure Protection secretariat. Sometime in 2007, the Assistant Secretary asked me to create and lead the Analysis and Strategy division.

3. In late 2008, I applied and had been initially selected for a Senior Executive Service (SES) position in DHS. At approximately the same time, Congress pressured the Undersecretary to implement a mandated chemical inspection program. In response to the Congressional pressure, the Assistant Secretary told me that the Undersecretary accelerated

the implementation of the chemical inspection program, which included realigning the SES

position for which I had been selected.

4.  I then met with my supervisor, the Assistant Secretary, to discuss my career. My

supervisor knew that the SES position was reclassified to a field in which I had no experience

or desire to lead and he informed me that he did not know when OPM would release another

SES billet for me. After discussing options and waiting a few months for OPM to release

another billet, I informed him that I would seek employment elsewhere rather than waiting.

5.  During our conversation we agreed that, in light of the fact that I would be leaving DHS,

it would be necessary to realign the programs I had repaired to managers who were

remaining in the secretariat. The program realignment was necessary and part of the

continuous reorganization of the then nascent Infrastructure Protection secretariat.

6.  During the realignment, I suggested that I establish a strategic communications program

which my supervisor approved. The branches in my division were realigned to better fit the

new sustainment plan created to accommodate my planned departure. I then became Chief of

Strategic Communications from 2009, I believe, until I left DHS in early 2010.

7.  All discussions about the realignment of my division, the decision not to wait in place for

release of another SES billet by OPM, my suggestion regarding creation of a strategic

communications office, and my informing my supervisor that I was going to look for another

job all occurred in the Assistant Secretary's office with no one else present. No one else was

privy to these discussions or the reasons for the subsequent developments.

8.  At no time was I involuntarily relieved, as a disciplinary measure or otherwise, from any

position at DHS. I was never the subject of disciplinary action nor was there a threat of

discipline. During my time at DHS I received extremely high performance ratings. I left DHS on positive terms having made significant improvements to a broad portfolio of programs.

9.  After meeting with my supervisor regarding my decision to depart, I began applying with other Federal agencies for select positions that I found interesting and commiserate with my pay grade. During my job search, I discovered that I could not access my 2008 performance appraisal because DHS had adopted a new contractor and computer program for managing appraisals. This change apparently resulted in the loss of my 2008 appraisal.

10.  When I applied for the DCAA Deputy Assistant Director position, I submitted my 2007 performance appraisal as part of my application since that was the only one I had available. To the best of my recollection, at the time of my application, I had not received my 2009 appraisal due to my evaluation cycle. I was never informed that I would be ineligible for the DCAA position if I did not submit my 2008 performance appraisal. I called and spoke with a woman at DCAA about only having an earlier performance appraisal available and she said it was not a problem. I do not remember her name.

11.  My performance appraisals at DHS were outstanding. I consistently received extremely high ratings and performance awards. I was credited with saving the government several millions of dollars and breathing new life into previously failing programs. I never received a negative performance appraisal nor did I receive disciplinary counseling.

12.  I do not know Mark Brooks. He was certainly never privy to any of my personal conversations with the Assistant Secretary about my career, why I chose to leave DHS, or why I transitioned from my division to create the new strategic communications branch.

Executed on:  1. 15. 14

Merrick E. Krause

3

# Exhibit 53

April 19, 2010

## EEO Complaint

I was not selected, on March 7, 2010, by the Director, Defense Contract Audit Agency (DCAA), and the Assistant Director Resources, for the position of Deputy Assistant Director Resources.

I was discriminated against based on my race (African American).

The employment decisions were based on racial stereotyping, racial bias, racial disparate treatment evidence and assumptions about my abilities, traits, and performance based on my race.

On January 14, 2010, I interviewed for the Deputy Assistant Director, Resources position. In accordance with the Merit system principles, I didn't receive fair and equitable treatment in all aspects of personnel management and the selection wasn't based on merit after fair and open competition.

1.) During the interview process on January 14, 2010, I asked the Assistant Director Resources to place my most current performance appraisal in my application packet which he didn't honor as the nomination packet was forwarded to the Director for selection. I provided the Assistant Director Resources my current (FY 2009) appraisal at the interview session, which he and the interview panel accepted and acknowledged. However, the selecting official didn't have my most current performance appraisal during his review of the nomination packet, which the current performance appraisal reflected 12 months of full performance and potential at the YC-03/GS-15 level. As per Appendix A, I earned the highest rating of 5, a "Role Model", and received the maximum amount of shares (6 each) awarded by Department of Defense, National Security Personnel System.

2.) As per Appendix B, the candidate who was selected was considered "not qualified" by the Human Resources Specialist as not having enough specialized experience for this level. However, the

000132

selectee was placed on the certificate as a VEOA and best-qualified candidate.

3.) As per Appendix C, the selection panel didn't rate or rank applicants against Knowledge, Skills, and Abilities (KSAs) or evaluate qualifications in accordance with the Job Analysis Work Sheet and Crediting Plan. However, in the job announcement, Appendix D, it stated applicants will be evaluated against these factors and we had to submit narrative statements responding to the KSAs.

4.) As per Appendix E, Chief, Personnel Operations, provided a statement which the Human Resources Officer believes anyone that applies to an open job announcement should be considered a competitive candidate and applicants should be rated and ranked. However, DCAA policy, Appendix F, states non-competitive applicants do not have to be rated and ranked. Even though, I should have been considered under both VEOA and the non-competitive certificates.

5.) The panel consisted of one ethnic group (White). There was no Human Resource representative on the panel. Prior to the job announcement, my first level supervisor, who served as a panel member, made a statement to me that I couldn't apply for the position because my wife works within the Resources Directorate. Based on this statement, a bias opinion was already formulated prior to my interview.

6.) As per Appendix G, Assistant Director Resources, identified in the nomination letter my experience in terms of months but didn't do the same for the selectee or the second alternate. Also, my 20 years of Military experience wasn't considered but the selectee Military experience was measured and considered. The Assistant Director noted I lacked more broad experience. However, as a Military Officer, I had over 7 years of experience, which I supervised and led a division level organization overseeing financial management, human resources, contracting, and labor relations. This information was provided in my resume to DCAA when I interviewed for my current job which the Assistant Director Resources and Deputy Assistant Director Resources resided over the panel.

7.) In the nomination letter, Appendix G, the Assistant Director Resources contacted the "first choice for the position" to verify the phone number of the applicant last supervisor. In accordance with

**108**[2]

DCAA Manual 1400.1, Chapter 36, Merit Promotion and DCAA Form 1436-3, Appendix H, the official notification of selection will be made by an "authorized personnel official" after ensuring all legal and regulatory requirements are met. The Assistant Director Resources violated the Merit Principles by contacting the applicant during the selection process. As per the rules, authorized personnel official should have made the contact.

8.) The job announcement (Appendix D) stated applicants must submit a copy of their most current performance appraisal. However, the selectee submitted a performance appraisal, Appendix I, dated 2006 – 2007. It was a requirement in the job announcement to submit the most current performance appraisal; the outdated performance appraisal submitted by the selectee should have been questioned during the application and/or interview process.

9.) As per Appendix J, I received my non-selection letter on March 18, 2010 without the official signature of the Human Resources Officer. This letter was received simultaneously upon notification to management of my Freedom of Information Act (FOIA) request, Appendix K, requesting "any and all information" pertaining to DCAA Job Title: Deputy Assistant Director, Resources, Announcement Number HQ-10-02. However, I didn't receive the panel notes, which I specified in my FOIA request nor all the information pertaining to the job announcement.

10.) As per Appendix L, Assistant Director Resources and Deputy Assistant Director Resources rated me a "5", highest rating, on applications for Senior Executive Service (SES) Candidate Development Programs. Based on these ratings, it was expressed by the Assistant Director Resources and Deputy Assistant Director Resources that I have full potential to perform at the SES level, however, I was not selected for the Deputy Assistant Resources position which is a YC-03/GS-15 position because I lack broad experience.

11.) As per Appendix M, the Assistant Director Resources stated in the documentation of candidates who were not interviewed that he was looking for someone with strengths to complement areas where he have less experience, so a strong background in functional areas "other than financial management" would best suit the current Resources organization. However, the Assistant Director Resources stated in the

nomination letter, Appendix G, that "I lacked the more broad experience in the areas of financial management." The inconsistencies in these statements clearly confirm there was racial bias on behalf of the Assistant Director Resources.

12.) As per Appendix N, I was denied a training request for the Defense Senior Leadership Program (DSLDP), which I view as a pattern and connected with this complaint, based on my race. I believe such pattern along with the agency hiring practices and policies as Systemic discrimination. The training request packet and other evidence, Appendix O, validate my claim that I was denied training based on my race.

Based on fact (s) the Assistant Director Resources displayed mischievousness, was irresponsible in his oath and duties, and the indifference of fair and equitable treatment shown during the process of this personnel action, I seek the Assistant Director Resources be relieved of his position or reassigned to another job of less responsibilities. Because of the discriminatory act and conduct, I am also seeking injunctive relief, reinstatement, front pay, back pay, attorney's fees and costs, compensatory and punitive damages.

In conclusion, I believe DCAA employment practices and policies intentionally discriminate and disproportionately exclude minorities (African Americans) from advancement and promotion to Senior Level and Senior Executive Service positions. I believe DCAA doesn't adopt "best practices" to reduce the likelihood of discrimination and to address impediments to equal employment opportunity for minorities. I believe DCAA job requirements aren't uniformly and consistently applied to persons of all races and colors.

Patrick W. Bush