IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| PATRICK W. BUSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:12-cv-01483(AJT/IDD) |
| | ) | |
| CHUCK HAGEL, | ) | |
| *Secretary of Defense,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this race discrimination case, plaintiff Patrick W. Bush (the "plaintiff" or "Bush")

alleges that he was denied a promotion and training opportunities and subjected to a hostile work

environment on account of his race, and then subjected to an increased level of hostile work

environment and otherwise retaliated against as a result of his filing a discrimination complaint

with the EEOC. This matter is before the Court on defendant Chuck Hagel's Motion for

Summary Judgment [Doc. No. 40] (the "Motion"). Upon consideration of the Motion, the

memoranda filed in support thereof and in opposition thereto, and the arguments of counsel at

the hearing held on January 17, 2014, and for the following reasons, the Motion will be

GRANTED.

### Procedural Background

In his Amended Complaint [Doc. No. 3],[1] plaintiff alleges (1) race discrimination/hostile

work environment (Count I); (2) retaliation/hostile work environment (Count II); and (3)

equitable relief (Count V).[2]

---

[1] The plaintiff filed his initial Complaint on December 21, 2012 [Doc. No. 1] and filed an
Amended Complaint [Doc. No. 3] on May 7, 2013. By Order dated July 12, 2013 [Doc. No. 20],

**Facts**

The Court finds the following facts undisputed pursuant to Local Civil Rule 56(B):[3]

Plaintiff has been employed by the Department of Defense, Defense Contract Audit

Agency ("DCAA") since May 2008.  On August 31, 2009, Bush applied to attend the Defense

Senior Leadership Development Program ("DSLDP").  Bush's application for this training

program was denied on the grounds that "it would not be fair to all other employees of the

agency if [his] name was submitted for the program without giving them an opportunity to also

apply for consideration."  DEX. 4.  About one month later, Bush applied for the position of

Deputy Assistant Director, Resources, within the agency.  As a result of the evaluation process

for that position, among seven candidates that were under consideration, Bush was ranked as

second most qualified behind another individual, Merrick Krause, who was ultimately chosen for

the position instead of Bush.[4]  Krause is white and Bush is African-American.

Bush learned that he had not been selected for the Deputy Assistant Director position on

March 7, 2010.  On April 19, 2010, Bush filed an informal complaint with the Equal

Employment Opportunity Commission ("EEOC") office.  In May 2010, he received what he

---

the Court dismissed Count III, alleging race discrimination under 42 U.S.C. § 1981 and Count
IV, alleging race discrimination and retaliation under 42 U.S.C. § 1983, and struck the *ad
damnum* clauses seeking compensatory damages in excess of $300,000.

[2] Plaintiff has alleged hostile work environment claims in conjunction with both Counts I and II
although this is a separate cause of action. The Court will thus analyze the facts before it as if a
hostile work environment claim was brought separate and apart from the discrimination and
retaliation claims found in Counts I and II.

[3] Local Rule 56(B) provides in pertinent part: "In determining a motion for summary judgment,
the Court may assume that facts identified by the moving party in its listing of material facts are
admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition
to the motion."

[4] Initially, Bush was ranked third behind Krause and another individual, Diane Hoover, who was
ranked first but withdrew her name after accepting another position. *See* DEX. 3.

perceived to be his first negative interim performance review.  On August 13, 2010, he filed a formal complaint with the EEOC alleging disparate treatment based on his race as well as being subjected to a hostile work environment.  After he contacted the EEOC, plaintiff alleges that his supervisors retaliated against him and created an abusive work environment in response to his filing the EEOC complaint by micromanaging his work, threatening him with written reprimands, isolating him from others, restricting his ability to act in the absence of his supervisors, verbally degrading him in front of his subordinates and coworkers, and forcing him on September 13, 2010, to disclose his Personally Identifiable Information ("PII") as part of an internal investigation.  On November 10, 2010, Plaintiff amended his EEOC complaint to include a retaliation claim.  Thereafter, Bush alleges that he continued to be discriminated and retaliated against in connection with training opportunities and work related conferences.  In that regard, in May 2011, Bush applied to attend the Federal Executive Institute ("FEI") course called Leadership for a Democratic Society, but his supervisors—Karen Cash and Philip Anderson— did not submit his name for consideration to attend this course and Bush was not selected to attend.  In August 2011, Bush requested to attend the General Services Administration ("GSA") SmartPay Conference, but Bush's supervisors did not authorize funds to cover Bush's attendance, though other agency employees were so authorized.  Lastly, in August 2011, Bush applied to attend the DSLDP once again, but he was not selected for this training course, while a white individual was selected.

### Standard

Summary judgment should be granted where the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  In

considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Entry of summary judgment is appropriate where the moving party demonstrates the lack of a genuine issue of fact for trial, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S.317, 324 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-248. Indeed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### Analysis

### I. Discriminatory Non-Selection

Bush alleges in Count I that he was unlawfully discriminated against when he was not selected for the position of Deputy Assistant Director, Resources, in March of 2010. In order to survive summary judgment, plaintiff must first establish a *prima facie* case of unlawful discrimination. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *Texas Dept of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to establish a *prima facie* case of discriminatory non-selection, a plaintiff must either produce "direct evidence" of discrimination, that is, "a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination," *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995), or satisfy the burden shifting rubric established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case under *McDonald Douglass*, a plaintiff must prove that he: "(1) is a member of a protected group; (2) applied for [the position in question]; (3) was

qualified for [the position]; and (4) was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination." *Weathers v. University of North Carolina at Chapel Hill*, 447 Fed. Appx. 508, 510 (4th Cir. 2011). If the plaintiff establishes this *prima facie* case of discrimination, a burden of production, not proof or persuasion, shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 253 (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If defendant meets its burden of production, plaintiff must then prove, by a preponderance of the evidence, that the defendant's articulated reasons are a pretext for discrimination. *Id.* Here, plaintiff has not produced any direct evidence of discrimination sufficient to establish a *prima facie* case and bases his opposition to summary judgment on the *McDonnell Douglas* burden shifting scheme.

Plaintiff has established a *prima facie* case based on the *McDonnell Douglas* test. But the defendant has likewise met its burden of articulating a non-discriminatory explanation for its selecting Krause, rather than Bush. The issue reduces, then, to whether Bush has come forward with evidence sufficient for a fact finder to conclude that defendant's explanation is not the real reason for Krause's selection, but rather a pretext for racial discrimination against Bush. *See Burdine*, 450 U.S. at 256 ("[Plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.") The Court must conclude that he has not.

A plaintiff "must establish that [he] was the better qualified candidate for the position sought to meet [his] burden of proving that the explanation is pretextual and that [he] was the victim of intentional discrimination. In analyzing whether the plaintiff has met [his] burden of proving that [he] was a better qualified candidate, it is the perception of the decision maker which is relevant."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 656 (4th Cir. 2002) (quoting *Evans v. Techs. App. & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996)) (internal citations and quotations omitted).  In that regard, a company's hiring decision based on an evaluation of the qualifications of competing candidates is entitled to substantial deference.  *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("We do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants."); *see also Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006) (holding that "when a plaintiff asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer.")

Defendant's explanation of its hiring decision is entitled to substantial weight and deference. It was the result of an open, structured process involving multiple levels of review and evaluation, with the decision ultimately being made by the director of the agency, based on an independent review of the candidates.  That decision is also supported by a comparison of the candidates' respective qualifications.  More specifically, Krause had three master's degrees, while plaintiff was in the process of working on his first, and Krause also had budget, financial management, personnel, and program management experience that plaintiff did not, including experience in high level positions within both the Department of Defense and Department of Homeland Security. *See* DEX. 3, pp. 3-4; DEX. 15; DEX. 17.  Plaintiff does not dispute these differences in qualifications, but rather points to his own experience not possessed by Krause, including longer experience within DCAA in a position with related responsibilities.  Bush is no doubt highly qualified for the position, as reflected in his overall ranking, but the record would not support any inference that Bush was overall necessarily more qualified than Krause.  More important, however, is that there is no evidence to support a finding that plaintiff was better qualified in the eyes of Fitzgerald, the selecting official

who independently reviewed the candidates' qualifications "based on a comparison of the educational credentials, leadership abilities, and resource management related work experiences cited in their resumes." DEX.18, pp. 4, 11. Moreover, there is no evidence of the type typically present in "pretext" cases that would justify submission to a jury on that issue. For example, there is no evidence that defendant's explanation changed over time or across individuals concerning why Krause was chosen over Bush, *see* DEX. 3, pp. 2-3; DEX. 13, p. 4; DEX. 14, 58:22-59:6, or that its hiring decision was motivated by considerations other than the qualifications of the candidates. *See* DEX.3, pp. 3-4; DEX.14, 64:11-65:11. In fact, the only consideration reflected in the record other than qualifications was whether the defendant's nepotism rules disqualified Bush because of his wife's employment with the defendant and the defendant's conclusion that they were not an impediment to Bush's selection and that Bush was a "strong candidate" for the position. *See* DEX. 10, 11.

In support of his position that a material issue of fact exists, to be decided by a jury, plaintiff argues that defendant failed to follow the appropriate selection procedures. The Court has reviewed that position in detail and concludes that even accepting as true plaintiff's contentions concerning the proper procedures to be followed, any deficiencies in the process are not probative of racial discrimination or that defendant's explanation of its hiring decision was a pretext for discrimination against Bush.

For the above reasons, the Court finds that defendant is entitled to summary judgment on plaintiff's claim of discriminatory non-selection for the position of Deputy Assistant Director, Resources.

## II. Discriminatory Denial of Training

Plaintiff also claims racial discrimination on the grounds that he was denied certain training opportunities, specifically the 2009 DSLDP training. To establish a *prima facie* case of

7

discriminatory denial of training, a plaintiff must show that "(1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination." *Thompson v. Potomac Electric Power Co.* 312 F.3d 645, 649-50 (4th Cir. 2002). Defendant concedes the first element, but argues that defendant did not "provide" the DSLDP training plaintiff claims he was denied in September 2009, because in fact no one from DCAA was allowed to participate in 2009, as the training had not been broadly advertised and competed. DEX. 5, p. 76; DEX. 7, pp. 3-7. In this regard, the official who made this decision, April Stephenson, explained to plaintiff at the time that she was concerned that others were not afforded the opportunity to submit applications for the DSLDP competition, and that morale issues might follow if those other employees learned that plaintiff had been nominated without a competitive process. DEX. 7, pp. 3-4. Defendant also argues that plaintiff was not necessarily "eligible" because his eligibility depended on a "competitive and arduous" process that plaintiff never participated in and for that reason, it is speculative whether he would have been chosen. DEX.5, pp. 72-74. Additionally, plaintiff received other training in FY10, FY11 and FY12 that was paid for by DCAA and was told that he should apply the following year for the DSLDP and would be seriously considered. DEX. 3. Plaintiff does not dispute any of these facts presented by the defendant.

Based on the present record and viewing that record in a light most favorable to the plaintiff, the plaintiff has failed to establish a *prima facie* case of racial discrimination based on his request for participation in the 2009 DSLDP training. Even if the circumstances of the denial of plaintiff's 2009 DSLDP application raised a permissible inference of discrimination, defendant has clearly provided a nondiscriminatory explanation for plaintiff's non-selection, and there is no evidence that such an explanation is a pretext for discrimination. Therefore, the Court finds that defendant is entitled to summary judgment on plaintiff's claim of discriminatory denial of his request for 2009 DSLDP training.

## III. Retaliation

Plaintiff claims that he was retaliated against in a variety of ways after he filed his informal complaint with the EEOC in April 2010 and his formal complaint with the EEOC in August 2010. To establish a *prima facie* claim of retaliation, plaintiff must show that "(1) he engaged in a protected activity; (2) the employer acted adversely against him; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). As with a substantive discrimination claim, if plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate non-retaliatory reason for its action. Plaintiff must then present evidence from which a reasonable juror could conclude that the employer's proffered reasons are pretext for intentional retaliation. In this respect, the Supreme Court recently held that "a plaintiff . . . must establish that his or her protected activity was a 'but-for' cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). As such, a plaintiff must establish that "the harm would not have occurred in the absence of – that is, *but for* – the defendant's conduct." *Id.* at 2524-25 (emphasis added) (citations omitted).

Plaintiff alleges the following retaliatory actions: (1) plaintiff received a negative interim performance evaluation from his supervisor Phillip Anderson in May 2010; (2) plaintiff's private and sensitive personal information was unlawfully obtained as part of an agency investigation for allegedly improperly authorizing rental cars for a subordinate; (3) plaintiff was not nominated to attend FEI training; (4) plaintiff's request to attend the GSA Smartpay Conference was denied; and (5) plaintiff was not selected to attend the 2011 DSLDP. Defendant concedes that the plaintiff engaged in protected activity, but otherwise disputes that plaintiff has made the required showings to survive summary judgment.

9

### A. Performance Appraisal

Plaintiff alleges that he was retaliated against when he received what he regarded as his first negative performance review in May 2010, after he had filed his informal EEOC complaint. However, the record in this case, even when viewed most favorably to the plaintiff, fails to establish that plaintiff has made the required showing. First, the evidence does not establish that plaintiff's performance appraisal in May 2010 constituted an adverse employment action, but rather the type of regularly conducted performance review that would have occurred in any event. There is also no evidence that plaintiff was penalized or suffered any negative consequences as a result of this performance evaluation. In fact, Bush's review is quite positive overall, with only minor "areas of improvement" listed that all deal with communication issues (*see* PEX. 18), and when plaintiff raised disagreement with the review (*see* DEX. 20), plaintiff's comments were considered and the appraisal was revised by removing certain language that plaintiff had demonstrated was unfounded. DEX. 21, pp. 3-4. To the extent the performance appraisal, in its final form, contained assessments that plaintiff disagreed with, the record simply reflects the not unusual situation where there is a difference of opinion between an employee and his supervisors concerning the employee's performance.

Even if Bush's performance appraisal were deemed an adverse employment action, he has otherwise failed to carry his burden with respect to his retaliation claim. It is true that plaintiff's review was issued approximately one month after plaintiff initially contacted the EEOC, and such temporal proximity can, under certain circumstances, establish a causal connection between the a complaint and an adverse employment action. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) ("[A] causal connection for purposes of demonstrating a *prima facie* case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity."). Here, however, there is no evidence that defendant's appraisal of Bush's

performance was not a good faith assessment by plaintiff's supervisors or that their explanation of the comments that Bush challenged, as explained to plaintiff after plaintiff raised several points of disagreement, was in any way pretextual. *See* DEX. 2. For these reasons, the Court finds that defendant is entitled to summary judgment on plaintiff's claim of retaliation with respect to his interim performance appraisal of May 2010.

### B. Agency Investigation

Plaintiff claims he was retaliated against when he was included in an investigation into rental car usage that led to the release to investigators of his travel vouchers containing his PII. According to defendant, and uncontested by plaintiff, the investigators became aware of a single potential violation of the DCAA rental car policy while investigating a sexual harassment complaint related to another employee. DEX. 14, pp. 75-76; DEX. 46. That initial investigation was initiated on April 9, 2010. On August 18 and 19, 2010, the investigators met with plaintiff, his supervisor Anderson, and Debra Fletcher, each of whom was involved in managing the rental car policy. DEX. 28, pp. 2-3; DEX. 46. On August 20, 2010, investigator Karen Cash then initiated an agency-wide investigation into the car rental issue. DEX. 46. While plaintiff points out, without challenge, that he "was the only Division Chief within the Resource Directorate who was investigated and questioned," it is also undisputed in the record that no other division chief within the Resource Directorate had employees that had been authorized to use the rental cars at issue. PEX. 2, 125:16-18.[5] Plaintiff also admits that other individuals' PII was collected for the investigation. DEX. 5, 119:15-17. In short, even if defendant's interview was considered an adverse action against him, the record does not support the claim that it was in retaliation for defendant's protected activity.

---

[5] Plaintiff complains that he was interviewed multiple times, and disputes the investigator's testimony that plaintiff himself caused the need for multiple interviews because he refused to answer questions and cut short the interviews, thereby necessitating an order from his supervisors to comply. DEX. 5, 28. Any factual disputes in this regard, however, are immaterial for the purposes of the summary judgment motion.

There is no evidence that the investigation or plaintiff's interview during that investigation was conducted for any reason other than defendant's stated purpose or that the plaintiff was singled out for disparate treatment during that investigation.[6] For these reasons, the Court finds that plaintiff has failed to establish as a matter of law that defendant's investigation was in retaliation for his protected activity; and, accordingly, defendant is entitled to summary judgment on plaintiff's retaliation claim based on the agency investigation.

### C. FEI Training Denial

Plaintiff claims that he was retaliated against by not being nominated for Federal Executive Institute ("FEI") training. The undisputed record, however, provides no support for this claim. In that regard, on August 10, 2010, plaintiff's second-line supervisor, Anderson, sent plaintiff an unsolicited e-mail asking if plaintiff would be interested in attending FEI training from August 21-September 17, 2010; however, plaintiff declined due to the short notice. DEX. 22. On September 17, 2010, Anderson again e-mailed plaintiff about attending FEI training in fiscal year 2011, and plaintiff attended FEI for two weeks in November 2011 and two weeks in March 2012. DEX. 23; DEX. 5, p. 97. The record therefore establishes that his supervisor contacted plaintiff about a potential nomination for the 2010 FEI four months after his informal complaint with the EEOC and before he filed his formal EEOC complaint in August 2010. DEX. 5, 98:14-98:17. It is therefore unclear which FEI training plaintiff claims he was denied in retaliation for protected activity. In any event, there is no evidence to support this claim, as his supervisor tried repeatedly to nominate plaintiff for this training, and in fact nominated plaintiff,

---

[6] The Court recognizes that plaintiff's initial interview took place within days of his filing his formal EEOC complaint. Nevertheless, any inference of causal connection between that protected activity and his interview is overcome by defendant's non-discriminatory explanation of the reason for that interview and the absence of any evidence that defendant's explanation was a pretext for discrimination against the plaintiff, particularly since defendant instituted the investigation on April 9, 2010, before any of defendant's protected activity.

and plaintiff attended the training, all of which plaintiff has admitted.  DEX. 5, 95:19-97:5.  The
Court finds and concludes that defendant is entitled to summary judgment as to plaintiff's claim
of retaliation and/or denial of training as to the FEI training.[7]

### D. GSA SmartPay Conference

Plaintiff complains that he was retaliated against by not being allowed to attend the GSA
SmartPay Conference that took place August 15-17, 2011.  Again, however, this claim has no
support in the record.

At some point before April 2011, plaintiff and the other division chiefs were advised that
attendance at the GSA SmartPay Conference was to be limited to two individuals from their
respective groups, that each division chief was to choose the two individuals from his group to
go to the conference, and that a division chief could select himself.  Plaintiff commendably
decided to choose two of his employees to attend.  DEX. 5, 140:20-24; DEX. 24, p. 3.  Plaintiff
concedes that attendance was limited to two people from his group and that the reasons given
were because of a funding shortage and the potentially negative perception associated with
sending a large number of people to a conference in Las Vegas.  DEX. 5, 62:13-17.  He bases his
claim, however, on events after he believed the funding shortfall had been resolved.  In this
regard, on August 3, 2011, plaintiff requested permission for him and another individual to
attend the conference, in addition to the two persons he had selected.  On August 5, 2011,
Anderson took the request under consideration; and it appears that on August 9, 2011, Anderson
denied the request, citing the desire to avoid the negative perceptions previously mentioned, even
if there had been some relief on funding.  DEX 5, 64:16-65:2; DEX. 27.  As it turned out,

---

[7] Plaintiff's position is apparently that he should have been nominated "before 2010."  DEX. 5,
97:24-98:1.  There is no evidence that he was eligible for FEI training before 2010, but even
assuming he was, there is no evidence to support this claim since plaintiff's first protected
activity occurred in April 2010.

plaintiff, nevertheless, took leave the week of the GSA SmartPay conference and attended the conference along with his wife, who had been selected to attend the conference by another manager. DEX.5, 65:7-24.

There is no evidence to support a claim of retaliation. There is no temporal proximity between Anderson's denial of his request to attend the conference and any protected activity, which last occurred approximately nine months earlier. *See Shields v. Fed. Exp. Corp.*, 120 Fed. Appx. 956, 963 (4th Cir. 2005) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("...temporal evidence alone cannot establish causation for a prima facie case of retaliation, unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'); *see also King v. Rumsfeld*, 328 F.3d 145, 151 & n. 5 (4th Cir. 2003) (finding that a ten-week gap between protected activity and termination "gives rise to a sufficient inference of causation" but was "sufficiently long so as to weaken significantly the inference of causation between the two events."); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (finding that a period of three to four months between the complaint and the adverse employment action was "too long to establish a causal connection by temporal proximity alone."); *Perry v. Kappos*, 489 Fed. Appx. 637, 643 (4th Cir. 2012) ("...a three-month lapse is too long to establish causation, without more Causation in fact is particularly lacking given that Bush was initially authorized to select himself but chose not to. DEX. 5, 66:9-25, 140:20-24; DEX. 24, p. 2; DEX. 26. Moreover, there is no evidence that defendant's reason for its actions was in any way pretextual. For these reasons, the Court finds that defendant is entitled to summary judgment with regard to plaintiff's claim of retaliation and/or denial of training related to the GSA SmartPay Conference.

14

**E. 2011 DSLDP**

Plaintiff claims that he was retaliated against when he was not selected for the 2011 DSLDP.

On June 14, 2011 plaintiff submitted to Anderson his application for the 2011 DSLDP. DEX. 40. On June 17, 2011, plaintiff's application to attend DSLDP was approved by both Anderson and Krause and submitted for the next level of consideration. DEX. 39. On July 29, 2011, the Career Development Board ("CDB") – made up of several individuals from throughout the agency and including Anderson – met to evaluate the three DSLDP applicants in order to make a recommendation to the DCAA Deputy Director. DEX. 41. The CDB reviewed the applications, and ultimately selected David Fix, who is white, for nomination, with plaintiff as the second choice. *Id.* The CDB determined that Fix was the best candidate and, in fact, DCAA had previously selected Fix to be the agency's DSLDP nominee, but Fix had to withdraw his nomination because he was deployed to Afghanistan for military service and thus was unable to attend. *Id.* DCAA Deputy Director Anita Bales then made the final determination, as the deciding official, to nominate Fix for the 2011 DSLDP. DEX. 42. On August 26, 2011, at plaintiff's request, Anderson provided to plaintiff an explanation concerning how the CDB selected Fix. DEX. 40; DEX. 45.

There is no evidence of retaliation associated with defendant's decision not to select Plaintiff for the 2011 DSLDP training. At a minimum, plaintiff has failed to establish any facts that would support an inference of a causal relationship between plaintiff's protected activity and the defendant's decision. Likewise, the defendant has articulated non-retaliatory reasons for Fix's selection over plaintiff and plaintiff has adduced no evidence of pretext. For these reasons, the Court finds that defendant is entitled to summary judgment with respect to plaintiff's claim of retaliation based on his non-selection for the 2011 DSLDP.

**IV. Hostile Work Environment**

The elements of a hostile work environment claim are well-established: "(1) that [plaintiff] was harassed "because of" her [membership in a protected class]; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 241 (4th Cir. 2000).

Here, plaintiff appears to re-allege the conduct discussed above as the basis for his hostile work environment claim, together with claims that he was deprived of the ability to make important decisions and that he was isolated and excluded from work correspondence and requests to stand in for his supervisors in their absence. He also points to finding his office door unlocked on three occasions as evidence that he is under increased surveillance, that his office is "bugged," and that his computer is monitored. He alleges that his supervisors tried to provoke him to display anger in meetings, threatened him with a reprimand, accused him of being unprofessional and had his work assignments unfairly scrutinized. DEX. 48, p. 11-12. He argues that he has suffered stress and sleeplessness as a result of problems at work (as well as at home) and reported these symptoms to a physician. PEX. 1, 121:22-25, 123:2-9, 22-25; PEX. 36.

"[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Plaintiff's "perception must be reasonable." *Ziskie*, 547 F.3d at 227. Based on this standard, when applied to the summary judgment record, plaintiff's evidence, when viewed in a light most favorable to him, is inadequate as a matter of law to support a claim of hostile working environment. For example, there is no evidence of any racial slurs or insults of any kind being used toward plaintiff, nor was plaintiff in any way physically threatened. Plaintiff alleges in conclusory

16

fashion that he was humiliated, but there is no evidence of conduct, or frequency of conduct, that would reasonably cause this result. Overall, there is simply insufficient evidence of adequately pervasive or severe conduct directed to the plaintiff to support a claim of abusive or hostile working environment. For these reasons, the Court finds that defendant is entitled to summary judgment on plaintiff's hostile work environment claims.

**V. Equitable Relief**

In Count V, plaintiff requests equitable relief in the form of a court order requiring defendant to implement an anti-discrimination policy and certain required training. For the reasons stated above, the Court finds there is no basis for such relief and that defendant is entitled to summary judgment as to plaintiff's claim for the requested equitable relief.

<strong>Conclusion</strong>

For the foregoing reasons, the Court finds and concludes that there are no genuine issues of material fact regarding any of plaintiff's claims, and that defendant is entitled to judgment as a matter of law on all remaining counts. The motion shall be GRANTED.

An appropriate Order will issue.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 30, 2014